Christina Burke
Alexis Burke
1024 Bayside Dr #448
Newport Beach, CA 92660
949-375-9042



IFP Waiver Filed

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP - 9 2022

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| CHRISTINA BURKE; AND ALEXIS BURKE | ) Civil Action No.: 8:22-CV-01666 FWS (JDEx) |
| Plaintiffs, | ) |
| vs. | ) INTENTIONAL INFLICTION OF ) EMOTIONAL DISTRESS; ) NEGLIGENT INFLICTION OF ) EMOTIONAL DISTRESS; |
| RIVENNA OLDEN; CELENA OLDEN; GREYSTAR REAL ESTATE PARTNERS; AND GREYSTAR WORLDWIDE, LLC, | ) CONVERSION (THEFT); TRESPASS; ) BREACH OF THE WARRANTY OF ) HABITABILITY; AND BREACH OF ) THE COVENANT OF QUIET ) POSSESSION AND ENJOYMENT |
| Defendants | ) |
|  | ) - *Jury Trial Requested* - |

## PLAINTIFFS' COMPLAINT FOR DAMAGES

COMES NOW CHRISTINA BURKE AND ALEXIS BURKE, Plaintiffs,

and in support of the complaint allege as follows:

## I.    PARTIES

1.1    Plaintiff CHRISTINA BURKE is a resident of the State of California, County of Orange.

1.2    Plaintiff ALEXIS BURKE is a resident of the State of California, County of Orange.

1.3    Plaintiffs Christina Burke and Alexis Burke are collectively referred to as "Plaintiffs" and individually as "Christina" and "Alexis", respectively.

1.4    Plaintiffs are informed and believe, and thereon allege, that Defendant RIVENNA OLDEN is a resident of the State of Colorado, Boulder County.

1.5    Plaintiffs are informed and believe, and thereon allege, that Defendant CELENA OLDEN is a resident of the State of Colorado, Eagle County.

1.6    Plaintiffs are informed and believe, and thereon allege, that Defendant GREYSTAR REAL PARTNERS is a business entity, form unknown, with its headquarters located in South Carolina, County of Charleston.

1.7    Plaintiffs are informed and believe, and thereon allege, that Defendant GREYSTAR WORLDWIDE, LLC is a Delaware corporation, with its headquarters located in South Carolina, County of Charleston.

1.8    Defendants GREYSTAR REAL PARTNERS and GREYSTAR WORLDWIDE, LLC will be collectively referred to as "Greystar."

1.9     At all times material to the claims in this complaint, Greystar was

authorized and conducted business in the State of California. Greystar is registered

with the California Secretary of State and has designated CT Corporate Systems as

its Registered Agent for Service of Process. CT Corporate Systems is located at

303 N. Brand Blvd., Ste. 700, Glendale, CA 91203.

## II.     JURISDICTION & VENUE

2.1     The district court has original jurisdiction of this civil action pursuant

to 28 U.S.C. § 1332(a). Plaintiffs are citizens of the California. Defendants

Rivenna Olden and Celena Olden are citizens of the State of Colorado. Defendant

Greystar is a Delaware corporation, citizen of South Carolina, and registered to do

business in the State of California. The amount in controversy exceeds Seventy-

Five Thousand Dollars ($75,000), exclusive of interest and costs.

2.2     Venue is properly before this Court under 28 USC § 1391(a) (2),

because a substantial part of the events giving rise to this claim, including the

location where the rental agreement was entered into, and the subject stolen

property was purchased, in Orange County, California.

## III.   BACKGROUND

3.1    Christina Burke and Alexis Burke signed a lease agreement with Greystar for the apartment complex commonly known as The Province Boulder. Christina is Alexis' mother.

3.2    When Christina and Alexis were moving into the apartment there was trash and debris strewn throughout the hallways and her apartment including, packing materials, used rolled up carpets, pieces of wood with nails sticking out, mattresses and boxes. Alexis tripped over a piece of rolled up carpet and fell hitting her head on one of the bedframes left on the floor in the common area of the apartment.

3.3    Shortly after Alexis moved into her apartment an employee of Greystar entered the locked apartment without notice, authorization, or any legitimate business purpose. Alexis was in her bedroom at the end of the hall when she saw the intruder in her apartment. He was holding a scrap piece of wood with nails in it. He turned and threw the scrap piece of wood at her screaming at her to keep her ******* trash out of the hallway. Alexis was terrified by the male intruder in her apartment screaming and threatening her. She suffered severe emotional distress and was visibly shaken. Alexis immediately called her mother crying. Christina also experienced severe emotional distress hearing a male intruder broke into her daughter's apartment and threatened and assaulted her.

3.4     The incident was reported to Greystar. The complaint was ignored. Alexis also requested that Greystar install a deadbolt lock on the front door and repair the locks on the sliding glass door and her bedroom windows. The request was ignored.

3.5     Alexis was in constant fear for her safety and began having nightmares about having her apartment broken into again.

3.6     Several months later, Christina and Alexis made several complaints about the air conditioning unit not working. The temperature in the apartment was more than 90 degrees and was unbearable. Greystar finally sent maintenance. However, the male individual verbally assaulted Alexis about having to repair the air conditioning unit. Alexis was in fear for her safety and immediately retreated to her bedroom and locked the door.

3.7     In retaliation for the complaints from Christina and Alexis concerning the incidents, Greystar started adding trumped-up late fees for a microwave that was broken before Alexis moved into the apartment, and falsely claimed the rental insurance payments required by Greystar were not being made. Greystar was trying to accumulate enough late fees to force an unlawful eviction.

3.8     When this didn't work, Greystar moved in another roommate, Wen Lin, an international student, into the apartment without notice or consent of the other occupants or any information concerning the new roommate. Greystar move

this international student into Alexis' apartment because she was forced out of her previous apartment after numerous complaints about her serious lack of personal hygiene and unsanitary living conditions.

3.9    Shortly after moving in the new roommate began discarded used sanitary napkins all over her bedroom and bathroom floor. She left food rotting in her bedroom and in the kitchen drawers. There were bags of trash decomposing in her bedroom. She didn't wash her sheets and they were stained and discolored. She also didn't use a shower curtain causing significant mold to accumulate in her bathroom.

3.10    Christina and Alexis made several complaints about the foul smell coming from the new roommate's bedroom and bathroom. The stench was so vile and overwhelming it was permeating throughout the entire apartment creating a hazardous health condition to the other occupants and rendering the premises unfit for occupancy.

3.11    Greystar responded to the complaints by sending Christina and Alexis a notice titled – "Lease Violation – Apartment Condition." Greystar was trying to use the hazardous condition they knowingly and intentionally created to unlawfully and constructively evict Alexis in retaliation for her complaints. The lease violation notice reads:

"The condition of your common area and well as individual bed spaces and bathrooms has come to our attention. The state that your unit is in currently is a violation of your lease. Your common area, individual bed spaces, and bathrooms need to be cleaned within 24 hours to avoid additional lease violations and/or fees. A member of our office will be inspecting your apartment 24 hours after the delivery of this notice to inspect the condition of the apartment.  If compliance is not met within 24 hours, you will be served a 10-day notice for compliance or possession.

- All trash must be removed from the apartment.
- Bedroom and Bathroom must be free of all trash, food, and clutter as this is a fire hazard and can also lead to insect infestation.
- *A foul odor was noticed coming from the Bathroom/Bed space.*
- Proper sanitation of clothing and bedsheets is required."

3.12   On March 3, 2022, Greystar locked Christina and Alexis' account and sent a notice falsely claiming they received "two (2) returned payments from your apartment," and demanding that, "all further payments must be made with certified funds." The fraudulent notice was sent as further retaliation for the complaints from Christina and Alexis concerning the hazardous condition of the apartment and done to force an unlawful eviction.

COMPLAINT FOR DAMAGES

3.13   Greystar sent management to the apartment to take pictures of the living conditions. One of the managers was gagging from the smell coming from the international student's room and permeating the apartment, as well as the graphic visual of seeing used sanitary napkins all over the bathroom and bedroom floor. Greystar did nothing to correct the extremely hazardous condition. Greystar simply responded it was a "cultural issue."

3.14   Alexis was forced to immediately move back home on or about May 5, 2022, because of the vile, hazardous, unsanitary, and uninhabitable conditions. Greystar never returned Alexis' deposit.

3.15   Alexis packed her belongings and locked her bedroom door before she left. She took a video of all her belongings. Christina had scheduled a mover to move all of Alexis' belongings to a new apartment for the following school year.

3.16   On or about August 3, 2022, Christina received a telephone call from the mover informing her there was no television in Alexis' room. Christina purchased the 43" flat screen television for Alexis in 2019, paying close to $600.00 due to electronic shortages caused by the pandemic.

3.17   Rivenna Olden was one of Alexis' roommates. She sent a text message to Alexis the following day that she broke into Alexis' room, stole the television, carried it off to her new apartment, and was demanding payment for its return. Rivenna was aware Alexis suffered severe anxiety after the male intruder

broke into the apartment and assaulted her. Rivenna used this fear to threaten and extort Alexis.

3.18   Celena, Rivenna's mother, then sent an email admitting she was complicit in stealing the television and was holding it as collateral to extort payment for its return.

3.19   Alexis subsequently learned that an employee of Greystar entered Alexis' bedroom on or about May 23rd without notice or authorization and purposely left her door unlocked, creating the opportunity for Rivenna and Celena to steal the television.

## IV.   FIRST CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (ALEXIS BURKE AND CHRISTINA BURKE):

### DEFENDANT GREYSTAR

4.1   Plaintiff incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

### (GREYSTAR INCIDENT #1)

4.2   Greystar's employee broke into Alexis' room and assaulted her with a board with protruding nails, throwing the board at Alexis, and screaming at her to keep her ******* trash out of the hallway. Alexis was terrified by the male

intruder in her apartment screaming and threatening her. She suffered immediate and severe emotional distress and was visibly shaken.

4.3     Assault and battery with a dangerous object is extreme and outrageous conduct.

4.4     The unidentified employee intended to cause Alexis's emotional distress out of sheer rage and/or to obtain his objective, which was to have student residents pick up the trash in the hallway left behind by the workers renovating the apartments.

4.5     In the alternative, the act was done with a reckless disregard of the probability that Alexis would suffer emotional distress by being confronted by a male intruder in her apartment yelling and threatening her with a board with nails protruding from it and then throwing the deadly object at her.

4.6     Alexis suffered immediate and severe emotional distress. She called her mother crying. Christina also experienced severe emotional distress hearing a male intruder broke into her daughter's apartment and threatened and assaulted her.

4.7     As a further direct and proximate result of Greystar's extreme and outrageous conduct, Alexis now suffers from insomnia and anxiety caused by the fear intruders while she is sleeping or alone in her apartment.

4.8     The unidentified employee was acting on his employer's behalf when the incident took place. The unidentified employee used a master key given to him by Greystar to break into Alexis' room. *See Farmers Ins. Grp. v. Cnty. of Santa Clara* (1995) 11 Cal. 4th 992, 1004.

4.9     Plaintiff is informed and believes, and thereon alleges, that Greystar failed to conduct a background check before hiring the unidentified employee, and further ratified the employee's actions by retaining the employee after the incident was reported.

4.10    Plaintiff has suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

4.11    Defendant's acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that their acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary damages in an amount sufficient to punish and deter Defendant for their willful, wanton, and reckless conduct.

(GREYSTAR INCIDENT #2)

4.12   Greystar is responsible not only for the result of its willful acts, but also for an injury occasioned to another by its want of ordinary care or skill in the management of its property.

4.13   In *Green v Superior Court* (1974) 10 C3d 616, the court described the scope of the implied warranty of habitability to include those items that are basic to decent, safe, sanitary housing; it did not limit its holding to situations in which defects in the premises constitute housing code violations. 10 C3d at 637. The issue in an implied warranty case is whether premises are habitable; serious code violations are simply one way of showing uninhabitability. *See Knight v Hallsthammar* (1981) 29 C3d 46. *See also Stoiber v Honeychuck* (1980) 101 CA3d 903.

4.14   In *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, the court held that a tenant may maintain a cause of action for infliction of emotional distress–anxiety, worry, discomfort–without physical injury in cases involving the tortious interference with property rights, including the landlord's failure to keep the premises in a habitable condition.

4.15   As discussed above, when Christina and Alexis were moving into the apartment there was trash and debris strewn throughout the hallways and her apartment including, packing materials, used rolled up carpets, pieces of wood

with nails sticking out, mattresses and boxes. Alexis tripped over a piece of rolled up carpet and fell hitting her head on one of the bedframes left on the floor in the common area of the apartment.

4.16   The premises was also unsafe. This is evidenced by the fact that an unidentified employee of Greystar was allowed to enter the apartment without notice, authorization or any legitimate purpose and assaulted Alexis. There were no working locks on the bedroom windows or sliding glass door in the common area. Alexis subsequently learned that Greystar also provided a master key to residents of the apartment who were designates as "on-call attendants" without providing these residents with any training or supervision. One of these "on-call attendants" entered Alexis' room and left the door unlocked leading to the theft of her personal property by her roommate, Rivenna and her mother, Celena.

4.17   In addition to being unsafe, the conditions of the apartment were vile, hazardous, unsanitary and uninhabitable. Greystar placed an international student in the apartment without notice to the roommates knowing that there were already numerous complaints about her personal hygiene forcing her to be moved from her previous apartment at the Province.

4.18   The international student Greystar intentionaly and unilaterally placed in the apartment left used sanitary napkins all over her bedroom and bathroom floor, left food rotting in her bedroom and kitchen drawers, had bags of trash

decomposing in her bedroom, and her sheets were stained and discolored. The stench was so vile and overwhelming it was permeating throughout the entire apartment creating a hazardous health condition to the other occupants and rendering the premises unfit for occupancy.

4.19   Greystar did nothing to correct the situation and instead, used the hazardous situation to try to force Alexis to vacate the apartment in retaliation for her complaints.

4.20   Greystar sent Alexis and Christina a notice that they were in violation of the lease and even acknowledged, "*[a] foul odor was noticed coming from the Bathroom/Bed space*." The issue was so hazardous that management was gagging from the smell coming from the international student's room and permeating the apartment, as well as the graphic visual of seeing used sanitary napkins all over the bathroom and bedroom floor.

4.21   Alexis was constantly ill (fever, fatigue, nausea, and vomiting) as a result of the biological pollutants in the apartment caused by the severe, unsanitary and hazardous conditions.

4.22   Alexis further suffered stress and anxiety having to deal with the constant foul order, rotting food left in the kitchen drawers, and used sanitary napkins left in the bathroom floor. She was finally forced to vacate the apartment.

4.23   Plaintiff is informed and believes, and thereon alleges, that Greystar had prior notice of the international student's serious lack of personal hygiene and unsanitary living conditions and intentionally placed her in the apartment in retaliation for the complaints made by Alexis and Christina.

4.24   In the alternative, the act was done with a reckless disregard of the probability that Alexis would suffer severe injuries as a result of the hazardous condition knowingly created by Greystar.

4.25   Plaintiff has suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

4.26   Defendant's acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that his acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary damages in an amount sufficient to punish and deter Defendant for their willful, wanton, and reckless conduct.

## V.   SECOND CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALEXIS BURKE): DEFENDANTS RIVENNA AND CELENA OLDEN

5.1    Plaintiff incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

5.2    Rivenna and Celena were aware Alexis suffered severe anxiety and an overwhelming fear of home invasion after the male intruder broke into her room and threatened and assaulted her with the dangerous instrument.

5.3    Knowing this, Rivenna and her mother, Celena, intentionally entered Alexis' private bedroom without her permission or right to do so, stole her television, carried it away, and then attempted to extort payment for its return.

5.4    Rivenna and Celena criminally trespassed and stole Alexis' television from her bedroom intensifying Alexis' anxiety of intruders breaking into her apartment and further causing Alexis to suffer fear, mistrust, and depression.

5.5    Rivenna and Celena intended to cause Alexis severe emotional distress by knowingly committing the trespass and theft of her personal property.

5.6    Rivenna and Celena knew or should have known that emotional distress was a likely result of their criminal actions.

5.7    In the alternative, the criminal acts were done with a reckless disregard of the probability that Alexis would suffer severe emotional distress.

5.8    Criminal trespass, theft and extortion are clearly extreme and outrageous behavior that exceeds all bounds tolerated by a decent society and is of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. What is even more disturbing and outrageous is that a mother would encourage her daughter to commit a crime against her roommate. There is no room in our society for such behavior.

5.9    Plaintiff has suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

5.10    Defendants' acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that their acts would, in reasonable probability, result in serious personal injury. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary damages in an amount sufficient to punish and deter Defendants for their willful, wanton, and reckless conduct.

## VI.   THIRD CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF

## EMOTIONAL DISTRESS (ALEXIS AND CHRISTINA BURKE):

## DEFENDANT GREYSTAR

6.1    Plaintiffs incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

6.2    Greystar failed to properly hire, train and supervised its employees.

6.3    An unidentified employee of Greystar was allowed to enter the apartment without notice, authorization or any legitimate purpose and assaulted Alexis.

6.4    Alexis immediately called her mother crying. Christina also experienced severe emotional distress hearing a male intruder broke into her daughter's apartment and threatened and assaulted her.

6.5    In retaliation for the complaints from Alexis and Christina, Greystar knowingly and intentionally placed an international student in Alexis' apartment they had just removed from another apartment in the complex for severe violations of health and safety codes.

6.6    The international student unilaterally placed in the apartment by Greystar left used sanitary napkins all over her bedroom and bathroom floor, there was food rotting in her bedroom and kitchen drawers, bags of trash decomposing in her bedroom, and she didn't wash her sheets and they were stained and

discolored. The stench was so vile and overwhelming it was permeating throughout the entire apartment creating a hazardous health condition to the other occupants and rendering the premises unfit for occupancy.

6.7    Greystar did nothing to correct the situation and instead, used the hazardous situation to try to force Alexis to vacate the apartment in retaliation for her complaints.

6.8    Greystar sent Alexis and Christina a notice that they were in violation of the lease and even indicated, "*A foul odor was noticed coming from the Bathroom/Bed space.*" The issue was so hazardous that management was gagging at the smell and seeing the used sanitary napkins while they were taking pictures to document the condition of the apartment.

6.9    Alexis suffered stress and anxiety having to deal with the constant foul order, rotting food left in the kitchen drawers, and used sanitary napkins left in the bathroom floor.

6.10   Alexis was constantly ill (fever, fatigue, nausea, and vomiting) as a result of the biological pollutants in the apartment caused by the severe, unsanitary and hazardous conditions. She was finally forced to vacate the apartment.

6.11   Greystar was negligent in the hiring, training and supervision of its employees, including establishing procedures preventing employees from

trespassing, threatening residents, and maintaining the residences in a safe, clean and tenable condition.

6.12    Greystar's negligent was a substantial factor in causing Plaintiffs serious emotional distress.

6.13    Plaintiffs have suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the Defendant's negligence as discussed herein.


## VII.    FOURTH CAUSE OF ACTION FOR TRESPASS (ALEXIS AND CHRISTINA BURKE): DEFENDANTS GREYSTAR, RIVENNA OLDEN AND CELENA OLDEN

7.1    Plaintiffs incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

7.2    Christina Burke and Alexis Burke signed a lease agreement with Greystar for the apartment complex commonly known as The Province Boulder.

(GREYSTAR INCIDENT #1)

7.3    An unidentified employee of Greystar intentionally entered Alexis' apartment without any notice, authorization, or legitimate business purpose and assaulted Alexis.

7.4    Alexis immediately called her mother crying. Christina also experienced severe emotional distress hearing a male intruder broke into her daughter's apartment and threatened and assaulted her.

(GREYSTAR INCIDENT #2)

7.5    Alexis was forced to vacate her apartment as a result of the hazardous and untenable conditions created by Greystar. Alexis packed her belongings and securely locked her bedroom door before she flew home. Movers had been scheduled. Greystar without notice, authorization, or legitimate business purpose entered Alexis' bedroom using a master key. Greystar then left the bedroom door unlocked, providing Rivenna and Celena Olden with the opportunity to steal her television.

(RIVENNA AND CELENA OLDEN)

7.6    Rivenna and Celena were aware Alexis suffered severe anxiety and an overwhelming fear of home invasion after the male intruder broke into her room and threatened and assaulted her with the dangerous instrument.

7.7    Despite this, Rivenna and her mother, Celena, intentionally entered Alexis' private bedroom without her permission or right to do so, stole her television, carried it away, and then attempted to extort payment for its return.

7.8    Rivenna and Celena criminally trespassed and stole Alexis' television from her bedroom intensifying Alexis' anxiety of intruders breaking into her apartment and further causing Alexis to suffer fear, mistrust, and depression.

7.9    Rivenna and Celena intended to cause Alexis severe emotional distress by knowingly committing the trespass and theft of her personal property.

7.10   Rivenna and Celena knew or should have known that emotional distress was a likely result of their criminal actions.

7.11   In the alternative, the criminal acts were done with a reckless disregard of the probability that Alexis would suffer severe emotional distress.

7.12   Criminal trespass, theft and extortion is clearly extreme and outrageous behavior that exceeds all bounds tolerated by a decent society and is of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. What is even more disturbing and outrageous is that a mother would encourage her daughter to commit a crime against her roommate. There is no room in our society for such behavior.

(DAMAGES AS A RESULT OF THE TRESPASS)

7.13   Plaintiff has suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

7.14   Defendant's acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that his acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary damages in an amount sufficient to punish and deter Defendant for their willful, wanton, and reckless conduct.

## VIII.  FIFTH CAUSE OF ACTION FOR CONVERSION (THEFT)

## (ALEXIS AND CHRISTINA BURKE):

## DEFENDANTS RIVENNA AND CELENA OLDEN

8.1   Plaintiff incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

8.2   "[C]onversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1158.

8.3     Christina purchased the 43" flat screen television for Alexis in 2019, paying close to $600.00 due to electronic shortages caused by the pandemic.

8.4     Rivenna and Celana Olden broke into Alexis' bedroom without her permission or authorization, stole the television, carried it away, and demanded payment for its return.

8.5     Plaintiff's suffered emotional distress as a result of the trespass and conversion, including fear, humiliation, mistrust, and depression as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

8.6     Defendant's acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that his acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary damages in an amount sufficient to punish and deter Defendant for their willful, wanton, and reckless conduct.

## IX.   SIXTH CAUSE OF ACTION FOR BREACH OF THE WARRANTY OF HABITABILITY (ALEXIS AND CHRISTINA BURKE): DEFENDANT GREYSTAR

9.1    Plaintiffs incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

9.2    When Christina and Alexis were moving into the apartment there was trash and debris strewn throughout the hallways and her apartment including, packing materials, used rolled up carpets, pieces of wood with nails sticking out, mattresses and boxes. Alexis tripped over a piece of rolled up carpet and fell hitting her head on one of the bedframes left on the floor in the common area of the apartment.

9.3.    An unidentified employee of Greystar entered the apartment without notice, authorization or any legitimate purpose and assaulted Alexis.

9.4    There were no working locks on the bedroom windows or sliding glass door in the common area.

9.5    Alexis subsequently learned that Greystar also provided a master key to residents of the apartment who were designates as "on-call attendants" without providing these residents with any training or supervision. One of these "on-call attendants" entered Alexis' room and left the door unlocked leading to the theft of her personal property by her roommate, Rivenna and her mother, Celena.

9.6     In addition to being unsafe, the conditions of the apartment were vile, hazardous, unsanitary and uninhabitable.

9.7     There were used sanitary napkins all over her bedroom and bathroom floor, there was food rotting in her bedroom and kitchen drawers, bags of trash decomposing in her bedroom, and black mold in the bathroom. The stench was so vile and overwhelming it was permeating throughout the entire apartment creating a hazardous health condition to the other occupants and rendering the premises unfit for occupancy.

9.8     Plaintiff is informed and believes, and thereon alleges, that Greystar had prior notice of the international student's serious lack of personal hygiene and unsanitary living conditions and intentionally placed her in the apartment in retaliation for the complaints made by Alexis and Christina.

9.9     In the alternative, the act was done with a reckless disregard of the probability that Alexis would suffer severe injuries as a result of the hazardous condition knowingly created by Greystar.

9.10    Greystar did nothing to correct the situation and instead, used the hazardous situation to try to force Alexis to vacate the apartment in retaliation for her complaints.

9.11    Greystar sent Alexis and Christina a notice that they were in violation of the lease and even indicated, "*A foul odor was noticed coming from the*

*Bathroom/Bed space*." The issue was so hazardous that management was gagging at the smell and seeing the used sanitary napkins while they were taking pictures to document the condition of the apartment.

9.12   Alexis was constantly ill (fever, fatigue, nausea, and vomiting) as a result of the biological pollutants in the apartment caused by the severe, unsanitary and hazardous conditions. She was finally forced to vacate the apartment.

9.13   Alexis further suffered stress and anxiety having to deal with the constant foul order, rotting food left in the kitchen drawers, and used sanitary napkins left in the bathroom floor.

9.14   Plaintiff has suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

9.15   Defendant's acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that his acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary

damages in an amount sufficient to punish and deter Defendant for their willful, wanton, and reckless conduct.

## X.    SEVENTH CAUSE OF ACTION FOR BREACH OF THE COVENANT OF QUIET USE AND ENJOYMENT (ALEXIS AND CHRISTINA BURKE): DEFENDANT GREYSTAR

10.1    Plaintiffs incorporates by reference Paragraphs 1 through 3.19, inclusive, of this complaint.

10.2    There is a 'presumption that a landlord intends the natural and probable consequences of his acts; and where the acts of the landlord effectively deprive the tenant of the use and enjoyment of the premises, the intent to evict is implied from the character of the acts done.  [Citations.]'  [Citation.]" *Nativi v. Deutsche Bank National Trust Company* (2014) 223 Cal.App.4th 261, 291-292.

10.3    "It is unlawful for a landlord to do any of the following for the purpose of influencing a tenant to vacate a dwelling: [¶] (1) Engage in conduct that violates subdivision (a) of Section 484 of the Penal Code [theft]. [¶] (2) Engage in conduct that violates Section 518 of the Penal Code [extortion]. [¶] (3) Use, or threaten to use force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises in violation of Section 1927 that would create an apprehension of harm in a

reasonable person . . . .  [¶]  (4) Commit a significant and intentional violation of Section 1954 [including abusing the right of access to harass the tenant (Civ. Code, § 1954, subd. (c)]."  (Civ. Code, § 1940.2, subd. (a).)

10.4   When Christina and Alexis were moving into the apartment there was trash and debris strewn throughout the hallways and her apartment including, packing materials, used rolled up carpets, pieces of wood with nails sticking out, mattresses and boxes. Alexis tripped over a piece of rolled up carpet and fell hitting her head on one of the bedframes left on the floor in the common area of the apartment.

10.5   An unidentified employee of Greystar entered the apartment without notice, authorization or any legitimate purpose and assaulted Alexis.

10.6   There were no working locks on the bedroom windows or sliding glass door in the common area.

10.7   Alexis subsequently learned that Greystar also provided a master key to residents of the apartment who were designates as "on-call attendants" without providing these residents with any training or supervision. One of these "on-call attendants" entered Alexis' room and left the door unlocked leading to the theft of her personal property by her roommate, Rivenna and her mother, Celena.

10.8   In addition to being unsafe, the conditions of the apartment were vile, hazardous, unsanitary and uninhabitable.

10.9    There were used sanitary napkins all over her bedroom and bathroom floor, there was food rotting in her bedroom and kitchen drawers, bags of trash decomposing in her bedroom, and black mold in the bathroom. The stench was so vile and overwhelming it was permeating throughout the entire apartment creating a hazardous health condition to the other occupants and rendering the premises unfit for occupancy.

10.10 Plaintiff is informed and believes, and thereon alleges, that Greystar had prior notice of the international student's serious lack of personal hygiene and unsanitary living conditions and intentionally placed her in the apartment in retaliation for the complaints made by Alexis and Christina.

10.11 In the alternative, the act was done with a reckless disregard of the probability that Alexis would suffer severe injuries as a result of the hazardous condition knowingly created by Greystar.

10.12 Greystar did nothing to correct the situation and instead, used the hazardous situation to try to force Alexis to vacate the apartment in retaliation for her complaints.

10.13 Greystar sent Alexis and Christina a notice that they were in violation of the lease and even indicated, "*A foul odor was noticed coming from the Bathroom/Bed space.*" The issue was so hazardous that management was gagging

at the smell and seeing the used sanitary napkins while they were taking pictures to document the condition of the apartment.

10.14 Alexis was constantly ill (fever, fatigue, nausea, and vomiting) as a result of the biological pollutants in the apartment caused by the severe, unsanitary and hazardous conditions. She was finally forced to vacate the apartment.

10.15 Alexis further suffered stress and anxiety having to deal with the constant foul order, rotting food left in the kitchen drawers, and used sanitary napkins left in the bathroom floor.

10.16 Plaintiffs has suffered in excess of $250,000 in present and future medical treatment, pain and suffering as a direct and proximate cause of the extreme and outrageous conduct discussed herein.

10.17 Defendant's acts were carried out with a conscious disregard for an extreme danger of risk and the rights of others and with actual awareness that his acts would, in reasonable probability, result in serious personal injury or death. Defendant caused substantial, serious and injury to Plaintiff and engaged in acts or omissions that, when viewed objectively, involved an extreme degree of risk, and a knowingly and willful violation of the law, without regard for the probability and magnitude of the potential harm to others. Accordingly, Plaintiff seeks exemplary damages in an amount sufficient to punish and deter Defendant for their willful, wanton, and reckless conduct.

## XI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request this Court entered judgment against the above-named Defendants for compensatory damages in an amount in excess of the $750,000, together with pre- and post-judgment interest, costs, and exemplary damages in an amount sufficient to punish the Defendants for their willful, wanton, reckless and bad faith conduct.

By: _____
    Christina Burke

By: _____
    Alexis Burke